May it please the court, the trial court committed three legal errors that requires a new trial and the four loans left in this case. First, the trial court failed to apply George's apportionment statute even though this was a business-related tort case seeking damages to property against eight individually named defendants. Let me tell you where I, how I see this case, maybe you're responsible. Yes, Your Honor. Assuming that apportionment applies in a case like this, I envision that the trial would have, be bifurcated. The first part of the trial would be liability and the total damages and the second part would be apportionment. At that point, every defendant would be pointing the finger at every other defendant and each would need a separate lawyer. As a matter of fact, they'd need separate lawyers during discovery because the first time you took the first defendant's deposition, of course, the other lawyers are going to be there also because they're concerned about apportionment. So my thought is that especially in a case like this of concerted activity in one place, just one decision made, and the farce that would result in a bifurcated trial of the sort I'm talking about with each defendant pointing the finger at another defendant because FDIC would start off with one defendant and say, well, this defendant was every one of them, so it's the whole amount, and that defendant, of course, is going to seek contribution and through the other defendants, the Alston and Byrd case in which Alston and Byrd wanted to apportion liability basically of damages to a non-party seems to be applied here. All right. Thank you, Your Honor. I understand your concern. I want to address a couple of things before I go to the bifurcation issue. First, I don't believe this was a concerted action, but I'll get to that in a little bit. And also, we, of course, were acutely aware that there is always the possibility that people might point the finger at each other, and that could have happened in our trial. The position of— Well, there automatically is a conflict of interest when the case begins if you use apportionment. Conflict in terms of one lawyer representing everybody. Well, the reason that we were able to represent all the defendants in the trial was because none of the defendants believed that any of them did anything wrong. That has been their position since the beginning of this case, that they all did what they were supposed to do in terms of a decision-making process, and further, that they didn't cause the damages that are alleged in this case. So I don't believe that apportionment would end up in a conflict free-for-all in this case, because they believe that none of them did anything wrong. So I think that the key here is that the apportionment ruling was driving the strategy of this case. That's why the FDIC and we wanted the apportionment ruling prior to the trial even beginning. If the court had ruled that apportionment did apply, I don't know that it would have meant that everybody would have pointed the fingers at everybody. But what I do think is that you would have had a dramatically different trial. You would have had one. The apportionment statute's goal and point is to avoid putting deep pockets on the hook for the whole thing. And there are deep pockets here, and perhaps they would have only gone after those deep pockets. We don't know. But what we do know is that it would have dramatically changed the trial. So I'd like to address, if you don't mind, your concerted action point. Because I know that the trial court and the FDIC argued that this is a concerted action. This is not a concerted action. A concerted action was the decision that they made on these loans. But this case, per the Loudermilk Supreme Court decision, is not about the decision itself. This case is about the process that each of the individual defendants used to prepare themselves for the decision. And each one of those individual defendants, the CEO, the loan officer, the outside directors, the head of the loan committee, had a different process and a different way that they used to prepare themselves and the other members of the committee for the decision that they ultimately made. That was not concerted. That was individual. That's what the Loudermilk Supreme Court case said that they had to focus on. The decision itself, it's protected. Business judgment rule protects it. The process is what we focused on. So um... We're about to end the Loudermilk Supreme Court case, does it say that? I'm sorry, Your Honor, could you say that again? I didn't hear you. What page of the opinion? What page of the opinion talks about the decision-making process? And what you just said, that the case is not about the decision but is about the process. That is not a direct quote, Your Honor, but the reality is that what the Loudermilk decision says is that negligence as to the process for reaching a decision is actionable, but the wisdom of the decision itself is not. We do have that quote in our briefs. I'm not sure I quite understand how that keeps it from being concerted action when especially the members of the Loan Committee that were there present with the exchange of ideas and views in a group decision-making, it seems to me is concerted action. And even with respect to an absent COET director, he or she reads the stuff that is presented to them and then under their practice is assumed to assent if he or she does not dissent. I can see perhaps how that's a little more individualistic, but with respect to the members present, I'm not sure I buy that that's not concerted. I understand. I'll echo that. I can't imagine that they didn't have a discussion. It would be prudent to do that because your individual preparation, you may have missed something. So, you looked at John Doe. Tell me what you thought. Understood. And so, first, I think, Judge Anderson, you've laid upon one of the logical inconsistencies. If it's a concerted action, how are the people who weren't there solely liable just because they weren't there? How can that be a concerted action? But putting that aside for the moment, I'd like to describe what was in the record at trial about how these decisions were made. A loan officer would get in a loan. That loan officer who was on the hook, who was one of the defendants, would read through the documents, read through whatever was submitted by the borrowers. Then that loan officer would take that, recommend that loan to the CEO and the other members, the inside directors who were also officers, who were also defendants. Then after they would have a discussion, then they would take that to the chair of the loan committee, Buddy Aldridge, who was also a defendant. They would discuss it with him. And then after that, it would be submitted to the loan committee, where the remainder of the outside directors would listen to the presentation they made, listen to the recommendations that they made, and then consider the situation themselves. And ask all kinds of questions. And ask all kinds of questions, which was also in the record. Get it all out on the table. They were all out on the table, and they were also different, separate decisions. That's also part of the process. All part of the process. And the process also includes these, the members of this loan committee receiving the information about the loan applications before the meeting. Right. Absolutely. And all, I'm sorry. And they had a right to veto. Any individual could veto a loan. Well, that, as a practice, that was not. Before, if they weren't able to come to the meeting, and they'd seen a loan application they thought was not a good one, they could say, we shouldn't do this loan, right? And it's a matter of practice that. But as, I mean, the process allowed them to do that. The process actually did not, there was nothing in the loan committee, in the loan policy or procedures or requirements that gave any one person a veto. They had a quorum requirement, in fact. Let me just read. But the people that weren't at the meeting saw the loan documents and had input into the decision, even if they were not able to come to the meeting. The people who were at the meeting saw the loan documents. There is no evidence in the record that the people who were not at that meeting saw any information about the loan at all. Well, yes, there is. Because it was submitted to them. Is that not in the record that that route, the practice was that this recommendation and the documents supporting it were submitted to all of the directors before the meeting? The one director who was found liable, or one of the directors who was found, no, is the short answer. It is true that they generally did get evidence prior to the loan committee meeting. But not in all cases. And in fact, Buddy Aldridge, who was deemed liable, even though he made something like 160 of 162 loans during the time, he was deemed liable for being absent for one of these loans. He got his information when he came to the meeting itself. He didn't. I still have to fax him things. He doesn't do email and that sort of thing. So I'd like to take, I've got about a minute. And even the documents that were sent to absent directors, those were probably the result of concerted action, the discussions amongst the inside directors. Discussion amongst some of the inside directors, not all of them. And of course, the documents are only part of the picture that the board, that the committee uses to make their decision. They rely on the discussions and the viewpoints of their other directors in the meeting. They just, and in the end, are we really going to hold people who aren't able to make one meeting? The FDIC gave the example of somebody whose wife died the day before a meeting. They're still liable if they don't show up for the meeting the next day. That can't be the law. That's not what the quorum law says. The policy is to get them all to the meeting because that's the best result. I understand somebody might have a spouse die or some such thing, some emergency. That's what the policy is. To have a policy in which you can be absent and avoid liability would not be good. Absolutely. And if the FDIC wanted to bring that claim, they could have, but that's not the claim they brought. As a matter of common law, the rule ought to be to encourage full discussion and everybody present. At any rate, you've saved some rebuttal time. Could I ask one more question? Should we not certify this issue to the Georgia Supreme Court whether or not Georgia, whether or not Proposition Rule 51-12-33 applies in the context of concerted action? I do not believe that this is concerted action, so I do not believe it should be submitted. We think it is. We ought to send it there. Understood. Okay. And the Georgia Supreme Court could answer that question too. The Georgia Supreme Court could answer that question, but I don't think the Georgia Supreme Court needs to. Again, there are plenty of cases where individual defendants have been claimed business-related torts for damage to property. We understand your position. Mr. Watson. Good morning and thank you. May it please the Court. I'll turn immediately to the last question that was posed, whether this should be certified to the Georgia Supreme Court, and it's our position that that's not necessary. The Georgia courts have already spoken about the application of this particular statute, and every appellate court decision to consider the language, injury to person or property, has held that it's limited to tangible personal property. And those decisions arose in two contexts. One, that language appears in two different statutes. It appears in the notice antelitum statute that requires notice before litigation in cases for money damages, for injuries to person or property, and it appears in the apportionment statute. And the Georgia courts, the only courts to consider the language, have all held that it applies only to cases involving injury to person or tangible personal property. It began with the Neely decision, which we cited. That was limited only to looking at injury to person or property in the notice antelitum statutes, but the rationale was identical, that it was an interrogation of common law. At common law, injury to person or property was intended to be limited to tangible property, and that by using that language, the statute was to be strictly construed to apply only to injury to person or property. Then, in City of Atlanta v. Beneteau, the Georgia Court of Appeals again considered the issue, both with regard to notice antelitum, but specifically with regard to this apportionment statute, 51-1233. That case involved contract damages, which is different from this case. With all due respect, Your Honor, it involved two different types of damages, and the question isn't whether it's contract damages, it's whether apportionment is required for any case of injury to person or property. The apportionment statute doesn't talk towards torts or contracts, but it isn't true that it was contracts only. The way I read that case, the tort claim in that case was barred by the economic loss rule. Therefore, the only thing you had left was contract damages, and all of the cases that held, on page 114 of that opinion, all of the cases that held that this apportionment statute applied only to injury to person or property involved contract damages. Respectfully, Your Honor, I have to disagree for two reasons. That was a consolidated appeal of multiple cases, and there were claims against the City of Atlanta and claims against the contractor for the City of Atlanta, and the discussion of the economic loss rule was with regard to the claims brought against the contractor for the City of Atlanta. In a separate part of that opinion, when there was an objection by one of the parties who had cross-appealed for, excuse me, the City of Atlanta had cross-appealed against other parties seeking contribution for the city's damages, and in that case, the court held, and the argument that was offered to dismiss that was that contribution wouldn't lie because of the apportionment statute, and the court was limited strictly to the issue of whether that apportionment statute defeated the contribution, and it said no because it is limited to person or property, and then it referred back to its earlier discussion about the notice antelitum. But the City of Atlanta case did not limit its analysis to the economic loss rule. There is, again, a separate portion of the opinion that dealt with whether the apportionment statute applied to defeat contribution claims, and the court explicitly held it does not because as we explained in the earlier context, and as it applies here, injury to person or property is limited to tangible personal property. That's explicit in City of Atlanta. This court then, in an Alexander contracting less than a year ago, reached the same conclusion. It applied City of Atlanta, and that case was not in our brief originally. It was in the 28-J letter, which we recently submitted, in which a panel of this court admittedly, an unreported decision that is not binding on this panel, but it should be persuasive authority that the court was presented with the identical issue here, a case of negligence that led to economic damages. The district court declined to instruct on apportionment because the district court held that it was limited to person or property. This court affirmed the decision of the district court not to instruct on apportionment in reliance on the City of Atlanta case, citing to that portion of the decision in which the court, the Georgia Court of Appeals, held that it was limited to person or property. I have, in the context of the notice antelitum, which is the same statutory language and the same analysis of derogation of common law, yesterday in your library downstairs, I ran across other appellate decisions that come to the same conclusion. I don't cite them here, but I think that Neely and the analysis in City of Atlanta on both antelitum and on the apportionment statute and its impact on contribution are clear about the limitation. The Eighth Circuit in that Miller v. Pine Bluff case that we cited about an Arkansas statute, but it was a similar statute, and in that case, the Court of Appeals understood that the legislature, by using that language, injury to person or property, hadn't demonstrated the necessary intent to stray from that limitation in the common law. Even if there was a derogation by requiring apportionment, that limitation was to be read in that strict sense. And as I say, Miller v. Pine Bluff is consistent with Neely, City of Atlanta, and Alexander contracting. Other principles of statutory construction also support our interpretation. What the directors in this case say is that every tort is an injury to person or property. They say that repeatedly in their briefs. Yet in the immediately preceding statutory provision, 51-1232, the Georgia legislature left intact contribution in the case of joint and several liability. And if it were correct that apportionment were required in every case, then that would simply be surplusage and it would be rendered superfluous, and that's not what Georgia's legislature intended, and principles of statutory construction should recognize the legislature's intent to retain some joint and several liability. That is your strongest argument, it seems to me. That is your strongest argument. Well, thank you, Your Honor. We believe that it's compelling as well. It was not the focus of those other cases recited. It doesn't persuade me that that's what the Georgia Supreme Court would do, though. And I am inclined to think this is a pretty serious matter, too. I know this case has already gone to the Georgia Supreme Court once, but it's an important point, and it seems to me is far from clear. Your Honor, we would never substitute our judgment for yours as to whether apportionment is required. I would just say that Georgia courts have spoken on the issue, and it's generally understood that this court can take guidance from the decisions of the lower courts in predicting what the Supreme Court would say, and they offer no contrary cases. The cases they've got, they bypass any analysis. They do offer three cases where the apportionment statute was apparently applied, the Alston-Byrd case, the Romandco cases. In none of those cases, in none of them, did the parties appear to contest injury to person or property or did the court ever consider that language and its intended limitation. We'd also just note that as the Loudermilk decision said, and as the questioning elicited answers from my brother, my friend, we don't believe the Loudermilk case says that the directors are not acting in concert here, but we also note that Loudermilk itself reflected that even though it discusses the directors' duties under the negligence standard of care, it says, but it's distinct from ordinary negligence as that term is used. It recognizes what bank directors do, and bank directors in this case were approving a loan collectively, and that's why we think it's axiomatic that the jury can't be left to speculate as to apportionment. The jury can't just pick and choose. There has to be some evidence, and as the cases consistently say— If you got into the apportionment stage, the jury would be listening to the various defendants  Yes, that's right, Your Honor. And the Poulston decision, which we cited, which is about extended damages in the case of a liability manufacturer, but the Poulston case makes clear that it is the defendant's burden. The FDIC had the burden to show the negligence and the losses. It is the defendant's burden to come forward with evidence for apportionment. The Alston and Byrd case stands for that proposition. I believe it does, Your Honor. But I cite the Poulston case because the Poulston case favorably embraces the restatement of torts, which is explicit about the duties—excuse me, the burdens of proof. And 433B of Restatement 2nd, which is cited by the Poulston decision— Well, it would be akin to contribution in any way, which is where the burdens are. Yes, but it explicitly explains that it is the defendant's burden to come forward in cases of apportionment. Well, that's the case of contribution also. Exactly, Your Honor. And I would just note that the Couch v. Redruth-Inns case, the first one that discusses 51-1233 as a case in derogation of common law, approvingly cites Poulston and didn't take any issue with that discussion in Poulston. And Poulston itself said that we're looking to traditional notions of tort law. And we'd suggest there's nothing in 51-1233 that explicitly or implicitly changes the burden of proof on the defendants regarding apportionment. If I can, I'd now like to turn to the merits argument that is— I've got a Poulston case reeled handy that's not going to— Your Honor, I can pull it up in two seconds if you decide— I got it. Never mind. I got it. All right. Thanks. I want to turn to this argument about proximate cause and their second argument here that somehow the judge erred in excluding testimony or evidence regarding broader economic events as an intervening cause. In this case, it's presented by the defendants. It didn't come up during the opening argument, but their briefs make it clear that they want to present the abstract questions of what is appropriately for a jury under questions of proximate law, and they ignore the question before this court, which is whether this district judge abused his discretion in excluding that testimony. And it's our position that it's undeniable that it was a proper exercise of discretion because the defendants withdrew those issues, explicitly withdrew them. The district judge entered an order saying, I will preclude all evidence relating to your affirmative defense of intervening cause as well as other affirmative defenses. And then when, despite that, and I'll just, if I can, I want to quickly walk through that they answered in their answer, document 31, with an affirmative defense that there was an intervening cause of global unforeseeable economic events. Then we went through discovery, and the FDIC, after discovery, after the Rule 26 disclosures, there was no damages expert. The expert talked about an unforeseeable crisis. The FDIC at docket 146 moved for summary judgment and said there are no undisputed facts here regarding broader economic causes as an intervening event. At 114, these directors responded. They did not oppose summary judgment. They responded by withdrawing their affirmative defenses and then saying, but we'll reserve it all for trial, which is not an appropriate response to summary judgment. I think everybody would like to say, we'll oppose summary judgment by reserving for trial. And the FDIC filed a reply and said, wait a minute, that's at docket 114, excuse me, 117. The FDIC said, wait a minute, there are no disputed facts presented. They can't declare the issue moot. We're entitled to summary judgment. We're not only entitled to summary judgment, but because of their response, we're entitled to an order establishing our undisputed facts as established for trial, further narrowing the issues for trial. At docket 114, 119, they filed their SIR reply. It's not in their appendix. We've added it to the supplemental appendix. In their SIR reply, they explained, as we were volunteering to give plaintiff all of its requested relief by withdrawing the challenged defendants from this case, the defendants expressly reserved their rights regarding the presentation of evidence on all remaining issues. That's at page 3 of 119-1. At page 4, they've already said the movements, the FDIC are already getting their requested relief at page 3. Plaintiffs do not object to the court affirmatively striking the challenged defenses that the defendants have agreed to withdraw. And the district court at docket 123 entered an order explicitly saying, I'm going to exclude all evidence relating to your affirmative defenses. They proposed to introduce it and the FDIC at docket 137 said, that's governed by the prior order and on the merits, they have no evidence that could get to a jury. And at docket 144, they responded with an abstract discussion of the law of proximate cause and mentioning their generalized evidence and never once in 144 did they ever respond to the earlier order of the district judge. So at docket 175, the district judge properly exercised his discretion to say my earlier order went unchallenged. I'm going to enforce it and exclude that evidence. So we respectfully submit that that was a proper exercise of discretion. And unless there are further questions, we urge the court to affirm the decisions below. Thank you. Thank you, your honor. I'd like to address two points that the FDIC made. First, it's not true that it's defendant's burden to put on the other defendant's liability. It is the case in the Alston Bird matter that it is defendant's burden if they're going to try to shift or argue that someone else who is a non-party was. Or a party. Yeah. I suggest it would be a party also. That is not the Georgia law. There has never been a case that I'm aware of that has ruled that a party has to put on evidence against another party for purposes of apportionment. I'm talking about raising the point that another party is more culpable, as it were. All right. I don't believe that we had a duty to point the finger at each other. The apportionment statute does not cause us to do that. Well, no, I'm talking about when it got into the damages into the apportionment stage. That is correct. At that point. That's what I'm talking about. At that point, there's a conflict between their adversaries. They may be. That is true. The second point that we waived our right to present evidence on the Great Recession. Before you get there on the apportionment issue, he, your opponent, answered my question. My question said to the effect that that City of Atlanta v. Beneteau case was talking about contract damages and held that they were not injured at personal property. He claims that that case involved more than contract damages. Can you comment on that? I disagree with that. They did have a negligence claim, but the negligence claim was seeking damages from the contract. And therefore, that was. And therefore, was barred by the economic loss rule. Correct. This is not a case where the defendants are parties to a contract where damages at issue for that contract are what the FDIC is seeking. And the same thing is true with Neely. Is not Neely a contract damages? Correct. They are seeking damages for contract. Is there any case with a real tort claim that has held that the apportionment statute applies? None. Not one. Go ahead. In terms of the Great Recession, we didn't waive our right to put on evidence about causation. We waived one affirmative defense that isn't even an affirmative defense. That's why we dropped it. We were trying to streamline the case, and then the court ruled that we had waived that effectively gave the FDIC summary judgment on the issue of causation. Okay. This is a serious consideration. Thank you. Thank you, gentlemen. We'll move to the last case.